# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SEGURA,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No.  1:13-cv-00865-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 13, 16, 17) |

## I.

## INTRODUCTION

Plaintiff Christopher Segura ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from asthma, schizoaffective disorder, alcoholism, and partial hearing loss.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 6, 2009, and a Title XVI application for supplemental security income on October 7, 2009. (AR 121, 156.) Plaintiff's applications were initially denied on June 30, 2010, and denied upon reconsideration on September 3, 2010. (AR 66-70, 73-77) Plaintiff requested and received a hearing before Administrative Law Judge Trevor Skarda ("the ALJ"). Plaintiff appeared for a hearing on August 16, 2011. (AR 33-58.) On September 19, 2011, the ALJ found that Plaintiff was not disabled. (AR 15-27.) The Appeals Council denied Plaintiff's request for review on April 16, 2013. (AR 1-3.)

### A.   Hearing Testimony

Plaintiff appeared for a hearing on August 16, 2011, and was represented by counsel, Jeffrey Milam. (AR 35.) Plaintiff was born on October 11, 1965, received his GED, and took some college classes in 2007. (AR 37, 38, 49-50.) Plaintiff has worked in the past and has left jobs without letting the boss know on two occasions. (AR 40.) In 1998, Plaintiff worked as a cashier for Orchard Supply. (AR 54.) Plaintiff also worked as a car driver for auction. (AR 53.) Plaintiff applied for Social Security benefits once before in 2006. (AR 45.) Plaintiff thinks that he might be able to work part time depending on the job. (AR 41.)

Plaintiff has been homeless for seven years. (AR 38.) He became homeless when the rent on his apartment was raised and his father, who was helping him, decided to give up the lease. (AR 50.) For the first three years, Plaintiff lived in his car and since then has lived at the Modesto Gospel Mission and Salvation Army shelter. (AR 38.) Currently, Plaintiff is residing at the Salvation Army shelter. (AR 37.) At the Salvation Army, Plaintiff has been sleeping in the lobby because he has a snoring problem that bothers the other residents. (AR 39.) Plaintiff keeps to himself so he does not bother anyone or get into anything. (AR 39-40.)

Plaintiff has irritable bowel syndrome and on a bad day might need to use the bathroom four times for up to fifteen minutes at a time. (AR 41-42.) Plaintiff has bad days four days a week. (AR 41.) Plaintiff has difficulty hearing, even when he wears his hearing aids. (AR 42.)

1  Plaintiff's current hearing aids are working pretty well.  (AR 43.)  Plaintiff has lower back
2  problems and if he sits too long his hips get really sore.  (AR 43.)  Plaintiff has not received any
3  treatment, but takes Naproxen when he feels the need.  (AR 43.)

4         Plaintiff takes Zoloft for his schizophrenia.  (AR 43.)  Plaintiff's schizophrenia makes
5  him anxious and causes issues dealing with people.  (AR 44.)  Plaintiff takes his medication in
6  the evening because he gets anxiety when he goes to the shelter.  (AR 52.)  His anxiety is worse
7  in the fall and winter because he has to stand in line and does not know if he will get into the
8  shelter.  (AR 52.)

9         Plaintiff has had difficulty working because his employers ask him to do more and more
10 stuff and it becomes confusing.  (AR 44.)  Plaintiff has trouble focusing when he is under a lot of
11 pressure.  (AR 44.)  His confusion started about ten years ago.  (AR 45.)  Plaintiff has trouble
12 concentrating and tends to drift off after about half an hour.  (AR 45.)  Plaintiff hears voices
13 when he is under a lot of stress, but that has not happened in a while.  (AR 46.)  Plaintiff
14 experiences stress when he has to deal with people expecting him to accomplish a lot of things or
15 expecting him to be or perform a certain way.  (AR 46.)  Plaintiff might feel pressure if he had to
16 go to work on time and stay at work eight hours a day, five days a week, depending on how he
17 had to get to work and what was expected of him when he got there.  (AR 46-47.)

18         On a normal day, Plaintiff leaves the shelter and goes downtown for coffee and donuts
19 which he pays for with food stamps.  (AR 47)  Plaintiff then goes to the library and uses the
20 internet or reads books.  (AR 47.)  Plaintiff will have to stop because he has problems
21 concentrating. (AR 47.)  Plaintiff walks about a half mile to the Salvation Army for lunch.  (AR
22 47-48.)  After lunch, Plaintiff goes back to the library.  (AR 48.)  Plaintiff goes back to the
23 Salvation Army for dinner.  (AR 48.)

24         Plaintiff does not have problems with drugs or alcohol and has not had a problem with
25 illegal drugs.  (AR 50.)  Plaintiff worked at Walmart in 2002, and before that worked at
26 temporary jobs.  (AR 50-51.)  Plaintiff worked as a bell ringer for the Salvation Army the prior
27 Christmas, but they did not hire him.  (AR 51.)  He did not bring in enough money and standing
28 hurt his back.  (AR 51-52.)  Plaintiff stopped working in July 2007 when the company he was

1 working for moved to Turlock. (AR 52-53.) After that he was unable to find any work. (AR
2 53.)

3       A vocational expert ("VE"), Harry Cynowa testified at the hearing. (AR 53-57.) The VE
4 described Plaintiff's past work experience as cashier, unskilled, light. (AR 54.)

5       The ALJ presented a hypothetical of a person of Plaintiff's age, education, and work
6 experience with no exertional limitations. (AR 55.) The individual must avoid concentrated
7 exposure to irritants, such as fumes, odors, dust, gases and poorly ventilated areas; limited to
8 occupations that do not require fine hearing capability or frequent telephone communication or
9 frequent verbal communication; and simple routine and repetitive tasks. (AR 55.) The work
10 must be low-stress, no more than occasional decision making or occasional changes in the work
11 setting. (AR 55.) Work may be around co-workers throughout the day with only occasional
12 interaction with co-workers, and no communication with the general public. (AR 55.)

13       The VE opined that this individual would be able to work as a hand packager, 6,000
14 positions in California and greater than 100,000 in the national economy; small products
15 assembler, 6,000 positions statewide and greater than 100,000 nationally; or a visual inspector,
16 2,500 positions locally and greater than 80,000 nationally. (AR 55-56.)

17       The VE opined that the threshold for off-task behavior would between 10 and 15 percent,
18 and at 20 percent all work would be precluded. (AR 56.) If an individual was off task up to a
19 fifth of the work day all work would be precluded. (AR 56.)

20       The VE was presented with a hypothetical of an individual who must be isolated and
21 could have no more than occasional supervision. (AR 56.) The VE opined that there would be
22 no jobs for this individual. (AR 56.)

23       **B.**    **ALJ Findings**

24       The ALJ found that Plaintiff had the following severe impairments: asthma,
25 schizoaffective disorder, alcoholism, and partial hearing loss. (AR 20.) Plaintiff's impairments,
26 alone and in combination, do not meet or medically equal the severity of one of the listed
27 impairments. (AR 21.) Plaintiff has the residual functional capacity to perform a full range of
28 work at all exertional levels, with the following nonexertional limitations: he must avoid

concentrated exposure to irritants such as fumes, odors, dust, gases, or poorly ventilated areas; limited to occupations that do not require fine hearing capability, frequent verbal communications, or frequent telephone communication; is able to perform simple, routine, repetitive tasks that require only occasional decision making and changes in the work setting; and can be around coworkers throughout the day, but have only occasional interaction with coworkers and no jobs where an essential element of the job requires communications with the general public.  (AR 22.)  There are significant jobs that exist in the national economy that Plaintiff can perform.  (AR 26.)  Plaintiff is not disabled.  (AR 27.)

### III.

### LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

IV.

DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by failing to properly weigh the opinions of Dr. Castillo, Dr. Garcia, and Dr. Fair and by failing to consider Plaintiff's irritable bowel syndrome at step two. (Plaintiff's Opening Brief at 7, ECF No. 13.) Defendant counters that the ALJ properly considered the medical evidence, including the opinions of the doctors and the effects of all of Plaintiff's severe impairments. (Defendant's Opposition to Plaintiff's Opening Brief 6-9, ECF No. 16.) Plaintiff replies that the ALJ failed to conclude what level of weight should be given to Dr. Castillo's opinion or provide specific and legitimate reasons for rejecting the opinion of Dr. Castillo and the opinions of Dr. Garcia and Dr. Fair do not constitute substantial evidence to justify rejecting the opinion of Dr. Castillo. (Plaintiff's Reply Brief 2-4, ECF No. 17.)

### A. Dr. Castillo's Opinion

Plaintiff contends that the ALJ failed to give sufficient weight to the opinion of Dr. Castillo, and did not indicate the weight given to or provide specific and legitimate reasons for rejecting the opinion. Defendant argues that Plaintiff provided sufficient reasons to reject the opinion of Dr. Castillo which was not supported by medical evidence in the record or Plaintiff's daily activities.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).

"In order to reject an examining physician's opinion, 'the ALJ has to give clear and convincing reasons. . . . Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.' " Hill, 698 F.3d at 1159-60 (quoting Regennitter v. Comm'r. of Soc.

Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir.1999)).

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, but "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  However, where "a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." Andrews, 53 F.3d at 1041.

1. Dr. Castillo's Evaluation

Dr. Castillo found that Plaintiff's social interaction was normal. (AR 228.)  He was oriented to month, day of the week, year and city of evaluation. (AR 228.)  Dr. Castillo also found that Plaintiff's attention span was fair, he was not easily distracted and needed no structure from the examiner during the exam, and his thought processes were organized. (AR 228.) Plaintiff's memory was found to be poor, but he was able to recall adequate details of his personal history. (AR 228.)

Plaintiff was able to recall seven digits forward and three digits backwards. (AR 228.) Plaintiff could not multiply 5 x $.25 accurately, however when asked what 5 quarters were he was able to respond appropriately with $1.25. (AR 228.)  When asked to spell "world" backwards Plaintiff stated "dlorw" and was only able to recite five days of the week in reverse. (AR 228.)  Plaintiff was unable to perform serial three subtractions beginning from 25. (AR 228.)  Plaintiff was unable to draw a clock showing the time at ten minutes after eleven. (AR 228.) Plaintiff could not describe the similarity between an apple and an orange, or interpret the proverb, "don't cry over spilled milk."  (AR 228.)  Plaintiff described his mood as being depressed, however the evaluator found his mood to be euthymic.[2]  (AR 228.)  Plaintiff was

---

[2] Moderation of mood, not manic or depressed.  Stedman's Medical Dictionary 678 (28th Ed. 2006).

exhibiting psychotic behavior during the examination due to his delusional thinking. (AR 228.)

Based on his observations, Dr. Castillo strongly suspected that Plaintiff had schizophrenia. (AR 229.) Plaintiff reported having hallucinations, was delusional about the movie Avatar affecting the world we live in, and exhibited disorganized thinking. (AR 229.) Plaintiff showed dysfunction in interpersonal relationships, work and self-care. (AR 229.) Dr. Castillo stated that Plaintiff did fairly well on the examination, but he still considered Plaintiff to have mental limitations. (AR 229.)

Dr. Castillo found that Plaintiff was able to socially interact with others at an age-appropriate level, understand instructions, sustain an ordinary routine without sustained supervision, complete simple tasks, and avoid normal hazards. (AR 229.) Plaintiff had marked limitation in his ability to complete detailed or complex tasks and to concentrate for at least two-hour increments at a time in order to maintain a regular work schedule. (AR 229.) Plaintiff is unable to handle funds. (AR 229.)

    2.    <u>ALJ's Opinion</u>

The ALJ found that the record fails to document any objective clinical findings establishing that Plaintiff's medically determinable impairments would prevent him from performing work in light of the reports of the treating and examining practitioners and the examination findings. (AR 23.) Dr. Castillo found Plaintiff generally oriented in time, place, and city, had good recall, and his thought processes were organized. (AR 23.) The ALJ opined that these findings indicate that Plaintiff's complaints are not fully substantiated by objective medical conclusions and Plaintiff's symptoms may not be as limiting as he alleged. (AR 23.)

While Plaintiff argues that his credibility is not at issue in this appeal, the ALJ based his finding on the fact that Plaintiff's symptoms are not as severe as Plaintiff alleged. The ALJ found that Plaintiff has been less than truthful about his alcohol abuse. (AR 23.) The ALJ provided a clear and convincing reason to find Plaintiff not credible and there is substantial evidence in the record to support the finding. Despite being diagnosed with alcoholism, Plaintiff

has consistently denied the use of alcohol.[3] (AR 50, 228, 312, 307, 331.) Even on the date that he was brought to the emergency room by ambulance with a 0.22 blood alcohol level, Plaintiff stated he did not use alcohol. (AR 312-13.) The ALJ found that Plaintiff's lack of credibility severely impacts the severity of his mental symptoms as the symptoms could be attributed to his abuse of alcohol. (AR 24.)

The ALJ considered that there is no indication that Plaintiff has ever been hospitalized due to his mental impairment and had been no significant increase or changes to Plaintiff's prescribed medications that would be indicative of an uncontrolled condition and Plaintiff does not describe any medication side effects that would prevent him from substantial gainful activity. (AR 23-24.) This finding is consistent with the medical record which shows that Plaintiff was stable on his medication and reported no side effects.

The ALJ considered that Plaintiff has admitted certain abilities which indicate that he is not as limited to the extent that would be expected given the complaints of disabling symptoms and limitations. (AR 24.) The ALJ found that the overall evidence suggests that Plaintiff has the ability to care for himself and maintain a home. (AR 24.) There is support in the record based on Plaintiff's stated abilities; he is able to wash dishes, vacuum, sweep, and do laundry (AR 229); and his daily activities as discussed below.

The ALJ also found that Plaintiff's daily activities are not inconsistent with the performance of many basic work activities. (AR 24.) Substantial evidence in the record supports this finding. Plaintiff is able to use public transportation by himself and walks several miles a day. (AR 47-48, 153, 229.) Plaintiff goes to the library daily and while at the library Plaintiff reads or uses the internet. (AR 47.) Plaintiff's hobbies are reading novels and surfing the internet. (AR 145, 152, 229.) Plaintiff participates in these activities every day and is able to do them fairly well. (AR 152.) Plaintiff indicates that he is able to follow written instructions if they are not complicated or too lengthy. (AR 153.) The ALJ properly considered that Plaintiff's

---

[3] While Plaintiff contends in the opening brief that Plaintiff asserted at the time he filed his application that he was disabled due to schizophrenia, asthma, alcoholism and partial hearing loss, this is not supported by the record. (ECF No. 13 at 2.) Initially, Plaintiff alleged disability due to hearing loss and he has never admitted to using alcohol or a history of alcohol abuse.

1  daily activities were inconsistent with the opinion of Dr. Castillo that Plaintiff was unable to
2  concentrate for at least two-hour increments at a time in order to maintain a regular work
3  schedule.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected
4  treating physician's opinion that was inconsistent with claimant's level of activity).

5        The ALJ stated that he considered the opinion of Dr. Castillo, as it was based upon a
6  thorough review of the evidence and familiarity with Social Security Rules and Regulations and
7  legal standards.  (AR 25.)  Although Dr. Castillo found Plaintiff had moderate mental
8  impairments, the ALJ found that Plaintiff's medical condition indicates less severe limitations.
9  (AR 25.)  There is substantial evidence in the medical record to indicate that Plaintiff's
10 symptoms were not as severe as stated by Dr. Castillo.  While Dr. Castillo found Plaintiff to be
11 delusional, the medical record is devoid of any other indication of such a condition. (AR 331.)

12       Further, Dr. Castillo's opinion was based on Plaintiff's statement that he hears voices.
13 (AR 229.)  The record demonstrates that Plaintiff has slight schizoaffective issues which are well
14 controlled with medication.  (AR 199, 201, 205, 210, 247, 330, 385.)  Other than Plaintiff's
15 statement in Dr. Castillo's report, the only record of Plaintiff hearing voices in the medical
16 record is on September 18, 2008, when the record states that Plaintiff saw a counselor and
17 admitted to having a conversation with himself.  (AR 208.)  The record of this visit on
18 September 9, 2008, states that Plaintiff "admits to hearing voices but then says he is not sure."
19 (AR 209.)  The ALJ properly considered that the medical record did not support the stated
20 limitations.  Tonapetyan, 242 F.3d at 1149 (ALJ properly rejected opinion of physician that was
21 unsupported by rational or treatment notes and offered no objective findings to support the
22 existence of the alleged conditions); Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995)
23 (contradiction between treatment notes and finding of disability is valid reason to reject
24 physician's opinion).

25       Plaintiff contends that since the ALJ states that Dr. Castillo did not have an opportunity
26 to review additional medical evidence submitted after the evaluation or listen to Plaintiff's sworn
27 testimony and observe his demeanor (AR 25), the ALJ was required to further develop the
28 record.  The ALJ has a duty to further develop the record where the evidence is ambiguous or the

ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150. Plaintiff argues that the ALJ had a duty to develop the record to cure any deficiencies; however the ALJ did not find the record deficient. The ALJ did not err by failing to further develop the record.

The ALJ provided legitimate and specific reasons to give little weight to the opinion of Dr. Castillo which are supported by substantial evidence in the record.

### B.   Opinions of Dr. Garcia and Dr. Fair

Plaintiff contends that the ALJ improperly gave significant weight to the opinions of Dr. Garcia and Dr. Fair. (ECF No. 13 at 12.) Defendant counters that the ALJ properly relied on the opinions of the agency physicians and gave specific and legitimate reasons for doing so. (ECF No. 16.) Plaintiff replies that Dr. Garcia and Dr. Fair did not have anything more than the opinions of Dr. Castillo and Dr. Solorza to rely upon and since they are not supported by independent clinical evidence their opinions could not constitute substantial evidence. (ECF No. 17 at 5.)

The ALJ gave significant weight to the opinions of Dr. Garcia and Dr. Fair as they were based upon a thorough review of the evidence and familiarity with the Social Security Rules and Regulations and legal standards. (AR 25, 26.) Further, the ALJ found they were "well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, the opinions are not inconsistent with other substantial evidence of record. (AR 25, 26.)

Dr. Garcia completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on June 23, 2010. (AR 258-68, 269-271.) Dr. Garcia found that Plaintiff had a medically determinable impairment present. (AR 260.) Plaintiff had mild restrictions of daily living activities, and difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (AR 266.) Plaintiff had moderately limited ability to understand and remember detailed instructions. (AR 269.)

1    Dr. Fair completed a case analysis on September 3, 2010.  (AR 336.)  Dr. Fair found that
2 Plaintiff has received no formal mental health treatment and there is no evidence of a mental
3 health referral.  (AR 336.)  His primary care provider completed the Mental Health Disorder
4 form, however, he did not provide any progress notes and he is not a mental health professional.
5 (AR 336.)  Dr. Fair affirmed the prior decision of June 23, 2010.  (AR 336.)

6    While Plaintiff argues that Dr. Garcia's diagnosis for Plaintiff was unclear, that is
7 consistent with the record as Dr. Castillo strongly suspected that Plaintiff had schizophrenia (AR
8 229); Mr. Sandoval reported that Plaintiff appears to have psychiatric problems but it is unclear
9 what they are (AR 209); and Dr. Lopez-Solorza alternately reported Plaintiff's condition as
10 schizoaffective disorder, schizophrenia, depression, mild depressive disorder, and seasonal
11 affective disorder (AR 199, 200, 202, 204, 205, 208, 210, 212, 246, 247, 385, 386, 387.)  All the
12 physicians recognized that Plaintiff had a mental disorder and the ALJ found that Plaintiff had a
13 severe mental impairment − schizoaffective disorder.  (AR 20.)  The issue addressed by Dr.
14 Garcia was the extent of Plaintiff's impairments based upon that disorder regardless of the label.

15    Further, although Plaintiff argues that Dr. Garcia had only the opinion of Dr. Castillo to
16 support his findings, the record shows that Dr. Garcia reviewed all three of Plaintiff's files.  (AR
17 256.)  Dr. Garcia found that Plaintiff had been diagnosed with schizophrenia upon a one-time
18 consultative examination and he was uncomfortable with this.  (AR 256.)  While Dr. Garcia
19 stated that they should double their efforts to contact any treating psychiatrist or facility where
20 Plaintiff received treatment, there was no such psychiatrist or facility.  Plaintiff was receiving
21 treatment only from Dr. Lopez-Solorza and those records were part of the file reviewed by Dr.
22 Garcia.

23    Plaintiff also contends that Dr. Fair admitted that he did not have all information
24 available to other medical sources.  (ECF No. 17 at 5.)  The Court assumes this is in reference to
25 Dr. Fair's statement that Dr. Lopez-Solorza did not provide progress notes.  (AR 336.)  However,
26 a review of the medical record shows there was one visit with Dr. Lopez-Solorza from the date
27 of Dr. Garcia's June 23, 2010 to the date of Dr. Fair's review.  Plaintiff was seen on July 15,
28 2010.  At this visit, Plaintiff was disheveled, his affect was flat, and Dr. Lopez-Solorza's

diagnosis was "? Schizoeffective D/O." This is consistent with Plaintiff's other visits which do not show clinical findings indicative of the degree of limitations found by Dr. Lopez-Solorza.

As discussed above, the ALJ provided legitimate and specific reasons to give little weight to the opinion of Dr. Castillo which are supported by substantial evidence in the record. The ALJ also found the opinion of Dr. Lopez-Solorza was not supported by medical test results or objective medical observations to support his findings. (AR 24.) Reviewing the medical record, Dr. Lopez-Solorza's notes show that Plaintiff presented with a flat affect and at times had poor eye contact and seemed internally preoccupied. (AR 199, 201, 202, 210, 208, 245, 246, 328, 385, 386, 387.) The record also shows that Plaintiff was talkative, spoke intelligently, and his mental issues were stable on his medication. (AR 202, 232, 363.) The ALJ also considered Plaintiff's activities which did not indicate the degree of impairment found by Dr. Lopez-Solorza. Where, as here, the evidence is subject to more than one rational interpretation, the ALJ's decision must be upheld. Thomas, 278 F.3d at 954..

The ALJ appropriately accorded weight to the opinions of Dr. Garcia and Dr. Fair.

**C.    Irritable Bowel Syndrome**

Finally, Plaintiff contends that the ALJ erred by failing to consider Plaintiff's irritable bowel syndrome at step two. (ECF No. 13 at 14.) Defendant counters that, since the ALJ found severe impairments, he merely needed to consider the functional effects of all his impairments, not whether the impairment was severe or non-severe. (ECF No. 16 at 9.)

At step two, the ALJ stated that he "took into consideration all the claimant's other diagnosed conditions and finds that there is minimal clinical evidence to corroborate or support any finding of significant vocational impact related to them." (AR 21.) The mere existence of an impairment is insufficient proof of a disability. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993.) When applying for disability benefits it is the claimant's duty to prove that he is disabled. 42 U.S.C. § 423(c)(5)(A). Although Plaintiff points to his own testimony regarding the severity of his symptoms, the medical record supports the ALJ's finding in relation to Plaintiff's irritable bowel syndrome.

While Plaintiff testified to having symptoms four times per week, the medical record is

devoid of any complaints to his physician related to his irritable bowel symptoms. The medical record demonstrates that Plaintiff's irritable bowel syndrome was stable and well controlled by his medication. (AR 200, 205, 385, 386.)

Even if the ALJ had failed to address Plaintiff's irritable bowel syndrome at step two, any such error would be harmless as the ALJ considered the limitations posed by Plaintiff's irritable bowel syndrome. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). In determining Plaintiff's residual functional capacity, the ALJ did consider that Plaintiff complained of irritable bowel symptoms four times per week. (AR 23.)

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Christopher Segura. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **May 23, 2014**

UNITED STATES MAGISTRATE JUDGE